IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | No. 2:14-cr-00844-DCN-2 |
| | ) | |
| CLAUNCE MAZYCK, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on remand from the United States Court of Appeals for the Fourth Circuit, ECF No. 488. The Fourth Circuit vacated and remanded this court's order, ECF No. 469, denying defendant Claunce Mazyck's ("Mazyck") motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255, ECF No. 426, and granting the United States of America's (the "government") motion to dismiss or, in the alternative, motion for summary judgment, ECF No. 433. Also before the court is Mazyck's motion for compassionate release, ECF No. 489. Following a hearing, the court finds Mazyck's § 2255 motion to be moot, and for the reasons set forth below, denies his motion for compassionate release.

## I.  BACKGROUND

On December 9, 2014, Mazyck was one of four co-defendants named in an indictment charging Mazyck with interstate drug trafficking in violation of 18 U.S.C. § 1951(b)(3), possession of a firearm in furtherance of a violent crime in violation of 18 U.S.C. § 924(c), and possession of a firearm after conviction of a felony in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). A second superseding indictment was returned on July 15, 2016, which charged different counts, including one count of Hobbs Act Robbery in violation of 18 U.S.C. § 1951.

1

On November 17, 2017, Mazyck pled guilty to Count 1 of the second superseding indictment for Hobbs Act Robbery pursuant to a written plea agreement.  Mazyck's written plea agreement contained a provision pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that established a sentencing range between a minimum term of imprisonment of 120 months and a maximum term of 240 months.  The written plea agreement also contained a provision under which Mazyck agreed to waive his right to contest his conviction and sentence on direct appeal or by collateral post-conviction attack, including attack by petition pursuant to 28 U.S.C. § 2255.  On May 17, 2017, the court sentenced Mazyck to a term of imprisonment of 180 months and entered judgment on May 23, 2017.  ECF No. 384.

On May 2, 2018, Mazyck, proceeding pro se, filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.  ECF No. 426.  On July 20, 2018, the government filed a motion to dismiss the petition.  ECF No. 433.  On November 22, 2019, the court granted the government's motion, thereby dismissing Mazyck's petition.  ECF No. 469.  Mazyck appealed the judgment, and on July 28, 2020, the Fourth Circuit granted a certificate appealability on the following issue:

> Whether an evidentiary hearing was necessary in the district court to resolve Mazyck's claim that counsel's failure to file a notice of appeal as requested amounted to ineffective assistance of counsel.

ECF No. 488.  On November 18, 2020, the Fourth Circuit vacated and remanded the court's decision for further proceedings on that issue.  ECF No. 489.  The court provided Mazyck with counsel for the evidentiary hearing, ECF No. 499, and scheduled the hearing to be held on June 6, 2023.  On the day of the hearing, Mazyck withdrew his ineffective assistance of counsel claim.  ECF No. 508.

2

While Mazyck's § 2255 motion was on appeal, Mazyck, proceeding pro se, filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) on November 5, 2020. ECF No. 489. The government responded to the motion on December 9, 2020. ECF No. 494. On January 13, 2021, Mazyck, through court-appointed counsel, supplemented his motion. ECF No. 497. On July 20, 2023, Mazyck filed a supplemental letter in support of his motion for compassionate release. ECF No. 509. The motion is ripe for the court's review.

## II.  STANDARD

### A.  Motion for Compassionate Release

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) provides an exception to this general rule where "extraordinary and compelling reasons" warrant a reduction in the defendant's sentence. Courts refer to requests for sentence reductions under this section as motions for "compassionate release."[1] United States v. Ferguson, 55 F.4th 262, 267–68 (4th Cir. 2022); United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022). Prior to the First Step Act of 2018, Pub. L. No 115-391, 132 Stat. 5194 (2018), the law permitted only the Bureau of Prisons ("BOP") to file motions for compassionate release. United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020). Section 603 of the First Step Act amended § 3582(c)(1)(A)(i), authorizing defendants themselves to file requests for compassionate release with the sentencing court after exhausting all available administrative remedies. Id. at 276.

---

[1] The term "compassionate release" is a misnomer since the court may decide to reduce the defendant's custodial sentence instead of eliminating it.

The determination of whether "extraordinary and compelling circumstances" warrant relief is within the discretion of the district court.  Hargrove, 30 F.4th at 195. The Fourth Circuit has said that district courts are empowered to "consider any extraordinary and compelling reason for release that defendant might raise."  McCoy, 981 F.3d at 284 (quoting United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020)) (emphasis in original).  If the court finds that such circumstances warrant a reduction in a defendant's sentence, it must "consider[] the factors set forth in [18 U.S.C.] § 3553(a)" to determine whether such a reduction is justified.  United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).  A defendant seeking compassionate release "has the burden of establishing that such relief is warranted." United States v. Griggs, 462 F. Supp. 3d 610, 615 (D.S.C. 2020); see also Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 57–58 (2005) ("Absent some reason to believe that Congress intended otherwise, therefore, we will conclude that the burden of persuasion lies where it usually falls, upon the party seeking relief.").  Even after the changes to § 3582(c)(1)(A)(i) promulgated under the First Step Act, the burden remains "exceptionally high."  McCoy, 981 F.3d at 288.

### B.  Pro Se Pleadings

As it relates to his motion for compassionate release, Mazyck is proceeding pro se.  Federal district courts are charged with liberally construing petitions filed by pro se litigants to allow the development of a potentially meritorious case.  See Hughes v. Rowe, 449 U.S. 5, 9–10 (1980).  Pro se petitions are therefore held to a less stringent standard than those drafted by attorneys.  See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).  Liberal construction, however, does not mean that a court may ignore a clear

failure in the pleading to allege facts that set forth a cognizable claim.  See Weller v. Dep't of Soc. Servs., 901 F.3d 387, 390–91 (4th Cir. 1990).

### III.  DISCUSSION

#### A.  Motion to Vacate

The court first briefly resolves Mazyck's motion to vacate in light of his decision to withdraw his claim at the hearing.  Mazyck previously challenged his conviction and sentence under § 2255 on three grounds.  As relevant here, Ground One of Mazyck's motion alleged that his counsel rendered ineffective assistance by failing to file a direct appeal of his sentence to the Fourth Circuit.  The court denied Mazyck's motion, finding that because Mazyck waived his right to appeal his conviction, any appeal would have been futile, and it would not have been ineffective for counsel to decide against appealing.  ECF No. 469.  Mazyck appealed the decision, and the Fourth Circuit issued a certificate of appealability on Ground One.  Upon review, the Fourth Circuit vacated the court's order and remanded the case for an evidentiary hearing, finding that this court erred in rejecting, without an evidentiary hearing, Mazyck's claim that his attorney was ineffective for failing to file a notice of appeal after Mazyck asked him to do so.  ECF No. 488 at 3.

At the hearing held on June 6, 2023, Mazyck formally withdrew Ground One. Although Mazyck was represented by court-appointed counsel for his § 2255 motion, the court ensured that Mazyck had personally decided to relinquish the claim.  When asked, Mazyck confirmed that he had made a fully-informed decision.  As such, the court finds Mazyck's motion for evidentiary hearing on remand to be moot and dismisses Mazyck's

§ 2255 motion.  Mazyck indicated at the hearing that he wished to proceed solely with his motion for compassionate release, and the court considers that motion below.

### B.  Motion for Compassionate Release

Mazyck provides two reasons for his compassionate release request: (1) his increased risk for illness should he contract COVID-19, and (2) his role as a caregiver to his mother and son.  The court first considers, as it must, whether Mazyck has exhausted all his administrative remedies or otherwise met the threshold requirement of § 3582(c)(1)(A).  Finding that Mazyck has done so, the court then addresses the substance of Mazyck's motion.  Finally, the court examines the § 3553(a) factors and whether they warrant a reduction in Mazyck's sentence, ultimately finding that they do not.

### 1.  Administrative Exhaustion

As a prerequisite to a motion for compassionate relief, a defendant must exhaust his available administrative remedies.  Section 3582(c)(1)(A)(i) provides that a defendant does so when: (1) the "defendant has fully exhausted his administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (2) the defendant requested compassionate relief from the warden of his facility and thirty days from the warden's receipt of the request has lapsed without response, "whichever is earlier."  18 U.S.C. § 3582(c)(1)(A)(i).

The government does not dispute that Mazyck has exhausted his administrative remedies.  See generally ECF No. 494.  The court similarly finds that Mazyck has exhausted his administrative remedies.  Mazyck wrote an inmate request to staff directed to the warden on May 27, 2020.  ECF No. 494-5.  In the letter, Mazyck stated he was

requesting compassionate release due to "an underlying condition" that put him "in grave danger" should he contract COVID-19.  Id.  On June 15, 2020, the warden denied Mazyck's request.  ECF No. 494-6.  Mazyck therefore exhausted his administrative remedies prior to bringing the instant motion for compassionate release.

### 2.  Extraordinary and Compelling Circumstances

Mazyck moves for compassionate release on two grounds.  First, Mazyck argues that he suffers from several medical conditions that place him at an increased risk of severe illness from COVID-19.  Second, Mazyck argues that after losing two close family members, he must assume a caregiver role for his mother and son.  The court examines each ground in turn.

### a.  COVID-19

Mazyck claims to suffer from "diabetes, high blood pressure, high cholesterol [], obesity, and hypertension."  ECF No. 489 at 3.  In response, the government argues that Mazyck's medical records do not fully support his contention because those records provide "no detail as to these ailments."  ECF No. 494 at 12.  Upon review, the court does not find that the lack of detail in the records disqualifies Mazyck's claims.  The prison medical records presented by the government indicate consistent treatment for the conditions listed, and those conditions are described as "current" conditions in his medical summary.  ECF No. 494-2 at 18 (showing that Mazyck suffers from type 2 diabetes and essential hypertension, and has a body mass index between 37.0–37.9).  As such, the court proceeds to assess whether these underlying conditions present extraordinary and compelling circumstances.

"In the context of [COVID-19], courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Harper, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020) (citations omitted). "When assessing compassionate release motions during the pandemic, the Court examines the Centers for Disease Control's ("CDC") list of risk factors for severe COVID-19 complications." Wilson v. United States, 2020 WL 3315995, at *3 (E.D. Va. June 18, 2020). The CDC states that individuals who are overweight or obese, suffer from heart conditions including hypertension, and have type 1 or type 2 diabetes are at a higher risk of developing complications from COVID-19. CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed August 21, 2023). Therefore, Mazyck appears to have certain conditions that place him at an elevated risk.

"Courts in this district and elsewhere have found, particularly at the height of the pandemic, that the COVID-19 pandemic may constitute an extraordinary and compelling reason [] in conjunction with specific risk factors such as age or medical condition." United States v. Cunningham, 2021 WL 2411134, at *2 (D.S.C. June 14, 2021). However, in light of the COVID-19 vaccine, "courts have recognized the difficulty in proving extraordinary and compelling reasons even when an inmate has a high-risk comorbidity." See United States v. Eppard, 2022 WL 1785274 at *3 (W.D. Va. June 1, 2022). "Moreover, a risk of infection, alone, is insufficient to show extraordinary and

compelling reasons." <u>Id.</u>; <u>United States v. Divers</u>, 2022 WL 1664070 at *3 (W.D. Va. May 25, 2022).

"[F]ollowing [the availability of] full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." <u>Eppard</u>, 2022 WL 1785274, at *3 (citing <u>United States v. Lemons</u>, 15 F.4th 747, 751 (6th Cir. 2021)). For most prisoners, the availability and effectiveness of vaccines make it "impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." <u>United States v. Brown</u>, 2022 WL 1664474 at *2 (D. Md. May 25, 2022) (quoting <u>United States v. Collins</u>, 2021 WL 4991588, at *3 (W.D. Va. Oct. 27, 2021)). "In the absence of evidence suggesting a particular risk of infection at the facility where a defendant is housed, the overall reduction in cases may indicate that the COVID-19 pandemic no longer constitutes an exceptional and compelling reason for compassionate release even in conjunction with underlying medical conditions." <u>United States v. Raap</u>, 2021 WL 2328048, at *2 (D.S.C. June 8, 2021); <u>see</u> <u>United States v. Wolfe</u>, 2021 WL 2291894, at *2 (D.S.C. June 4, 2021); <u>United States v. Moses</u>, 2021 WL 2117159, at *2 (D.S.C. May 25, 2021).

The availability and efficacy of the vaccine has been found by other courts in the Fourth Circuit to "dramatically affect whether an inmate's medical conditions constitute the 'extraordinary and compelling reason' required to further consider compassionate release." <u>United States v. Sanders</u>, 2021 WL 1428546, at *3 (D. Md. Apr. 15, 2021) (collecting cases). Mazyck's motion was filed before there were widespread vaccination

efforts in both the public and in prison facilities.  His vaccination status is unknown based

on the records before the court.  Regardless, the availability of vaccines means that even

if Mazyck is not vaccinated, he can mitigate his risk of developing the most serious

illnesses.  See United States v. Durham, 2023 WL 3671820, at *3 (W.D.N.C. May 25,

2023) (finding that despite the defendant's three CDC-identified COVID risk factors, his

"access to a vaccine upon request" meant compassionate release was inappropriate).

As such, the court does not find that the risks posed by COVID-19 constitute an

extraordinary and compelling reason for a reduced sentence.  There are minimal cases of

COVID-19 at FCI Williamsburg, where Mazyck is currently located, which further

diminishes the risk of his exposure to COVID-19.[2]  Any elevated risk for COVID-19 is a

risk that Mazyck can more than adequately mitigate, and thus does not constitute an

extraordinary and compelling reason to warrant a reduction in his sentence.

### b.  Caregiver Role

Mazyck further argues in his motion that he has lost two close family members,

and his inability to assist his family while incarcerated has added additional strain.  ECF

No. 497 at 1.  Specifically, he states that because of those losses, he is now the

"caregiver" for both his ill mother and for his son, who "is now caught up in the system."

ECF No. 489 at 6.  In a letter to the court, the mother of Mazyck's second oldest son

wrote that Mazyck's twelve-year-old son needed his father during the COVID-19

---

[2] According to the BOP COVD-19 case tracker, FCI Williamsburg currently
reports zero COVID-19 cases among staff or inmates, and 1624 inmates and 208 staff
members there have been vaccinated. Inmate COVID19 Data, Federal Bureau of
Prisons, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited August 22,
2023).

pandemic, particularly because Mazyck has realized that "his sons can fall into his footsteps on making bad decisions."  ECF No. 497-1.

"Some courts have found extraordinary and compelling grounds for compassionate release if a defendant demonstrates that (1) a parent is incapacitated and (2) the defendant is the only possible caregiver for that parent."  United States v. Allen, 2021 WL 3025, at *3 (W.D. Va. July 16, 2021) (citing United States v. Bucci, 409 F. Supp. 3d 1, 2 (D. Mass. 2019)).  But in general, courts in the Fourth Circuit have generally denied compassionate release on these grounds when other caregivers are available.  See United States v. Henriquez, 2021 WL 5771543, at *3–4 (M.D.N.C. Dec. 6, 2021) (concluding that need to care for elderly parents who each required "help with all [] activities of daily living" was not alone an extraordinary and compelling reason for compassionate release); United States v. Smith, 2021 WL 3641463, at *3 (E.D. Va. Aug. 17, 2021) (denying compassionate release where others could care for the defendant's ill father); United States v. Hargrove, 2021 WL 2210844, at *4 (W.D.N.C. June 1, 2021) (denying compassionate release where the defendant sought to care for arthritic mother who lived with the defendant's brother and the defendant had other living siblings).

The same principle applies for the care of a child.  See United States v. Guest, 2022 WL 2104492, at *13 (D. Md. June 9, 2022) (finding that "the struggle to find suitable childcare is one faced by people in every walk of life" and does not rise to the level of being extraordinary or compelling); United States v. Farlow, 2021 WL 1207485, at *3 (D.N.J. Mar. 30, 2021) (denying motion that requested compassionate release on the ground that the mother of the defendant's child was an essential worker and had difficulty caring for their child during the pandemic); United States v. Dogan, 2020 WL 4208532,

at *3 (E.D. Cal. Jul. 22, 2020) ("The Court recognizes that caring for children fulltime, in the midst of a public health crisis, is increasingly challenging. But it is neither unusual nor insurmountable."). While an immediate need to care for an incapacitated parent or for a child may constitute an extraordinary and compelling reason for compassionate release, Mazyck has not sufficiently established that need exists here. As other courts have noted, "the availability of other family members to provide needed care is an important factor." Henriquez, 2021 WL 5771543, at *4. At the time of the letter, it appeared that the mother of Mazyck's second son was able to care for his children. Mazyck has not provided any additional details that would allow the court to evaluate whether he is needed to fulfill a primary caregiver role. Although the court does not doubt Mazyck's desire to help his family, precedent constrains the court from finding that his role would constitute an extraordinary and compelling circumstance.

### 3. Section 3553(a) Factors

Even if Mazyck had presented extraordinary and compelling circumstances, the factors set forth in 18 U.S.C. § 3553(a) weigh against his release or a reduction in his sentence. In sentencing a defendant or determining whether a reduction is justified, § 3553(a) requires a court "impose a sentence sufficient, but not greater than necessary" by considering the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for [the offense committed];
[. . .]
(5) any pertinent policy statement;
[. . .]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The court finds that the § 3553(a) factors weigh against reducing Mazyck's sentence to compassionate release or otherwise reducing his sentence. The nature and circumstances of the alleged offense were serious. Mazyck's instant conviction is for the armed robbery of a residence for drugs or drug proceeds, where the victims included a twelve-year-old boy. PSR ¶¶ 11–18. Mazyck and his codefendants discharged at least three rounds during the robbery and terrorized the victims, including the boy. Id. at 11. Mazyck's adult criminal, history, which includes multiple convictions involving drugs and violence, spans from when he was just seventeen years old to when he was sentenced for the instant crime at the age of forty-one. Id. ¶ 29–37. Courts have imposed fines, mandatory community service, probation, supervised release, and finally imprisonment to unsuccessfully deter Mazyck from continued criminal activity. Id. Mazyck's offense, conduct, and his criminal history demonstrate his disregard for the safety of others. A substantial sentence is necessary to reflect the seriousness of his offense, promote respect for the law, provide just punishment, and to afford adequate deterrence. Thus, Mazyck's sentence accurately reflects the seriousness of the crime and his history and characteristics.

The court recognizes the COVID-19 pandemic has impacted the nation in many ways. The court has considered Mazyck's age, current medical conditions, and the

13

conditions at FCI Williamsburg and is mindful Mazyck may be at increased risk should he contract COVID-19, especially since he is incarcerated.  See United States v. Mangarella, 57 F.4th 197, 204 (4th Cir. 2023) ("Because it is not clear that the district court considered Mangarella's particular vulnerability to COVID-19 in weighing the § 3553(a) factors, we cannot meaningfully review its denial of Mangarella's motion for compassionate release."); United States v. Jenkins, 22 F.4th 162, 172 (4th Cir. 2021) ("Thus, the district court's decision reflects its understanding of Jenkins' health conditions, the conditions of FCI Fort Dix, and the seriousness of those circumstances in light of the COVID-19 pandemic.").

The court has also considered the supporting documents submitted by Mazyck. These include: (1) an email submitted by Mazyck's family in support of his motion, ECF No. 497-1, and a letter written by Mazyck's friend who has known him for over thirty-eight years, ECF No. 509.  In the letters, Mazyck's acquaintances write that Mazyck has matured during his incarceration and renounced his old ways.  Mazyck's friend suggested that the change could be "accredited" to him "f[inding] religion."  ECF No. 509 at 1.  The court acknowledges that Mazyck has made efforts at rehabilitation while in prison.  For example, he has completed a drug education course, ECF No. 494-3 at 2, and enrolled in classes on parenting and for his commercial driver's license, ECF No. 497 at 2; see also Mangarella, 57 F.4th at 203 ("In appropriate [compassionate release] cases, [the district court] must account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments."); McCoy, 981 F.3d at 286, 288 (noting the district court can consider post-sentence conduct in its compassionate release analysis).

14

At the same time, Mazyck has in the past repeatedly violated bond or probation following release from both state and federal prisons.  PSR ¶¶ 24–44.  Thus, while the court encourages Mazyck to continue his efforts to enhance his chances of success upon release and to nurture positive relationships to meaningfully contribute to society after he serves his sentence, the court finds that his rehabilitative efforts, while commendable, do not tip the balance of the facts in favor of a reduction in his sentence.  See United States v. Patterson, 2022 WL 1624982 at *4 (D.S.C. May 23, 2022) (finding that a defendant's rehabilitation efforts through educational courses and programming dealing with health, personal finance, and employment was not enough under the § 3553(a) factors to favor a sentence reduction); Brown, 2022 WL 1664474 at *3 (holding that completing various courses that will be valuable to the defendant upon release and securing steady employment are not "unusually deep" rehabilitation efforts and noting that the defendant's sentence near the mandatory minimum was not based on a view that he needed significant rehabilitation or training).

In sum, to release Mazyck or to reduce his sentence at this time would disserve the interests embodied in a sentencing determination—most importantly, the need for the sentence imposed to reflect the need for just punishment and the need to protect the public from further crimes.  It would also minimize the impact of Mazyck's crimes and the seriousness of his offense.  Although the court has the discretion to modify Mazyck's sentence, the 180-month sentence remains appropriate, as the sentence reflects the seriousness of the offense, promotes respect for the law, and provides a just punishment.  Reconsideration of these factors counsels against a sentence reduction.

## IV.   CONCLUSION

For the reasons set forth above, the court **FINDS AS MOOT** Mazyck's motion to vacate on remand from the Fourth Circuit and **DENIES** Mazyck's motion for compassionate release.

   **AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 23, 2023**
**Charleston, South Carolina**